MOSES L. WEIDER v. W. T. MADDOX ET AL.

(Case No. 5341.)

1. VOLUNTARY ASSIGNMENTS—An assignment which is the product of the will acting without legal compulsion is voluntary. The right to make such an assignment existed at common law and is not derived from any statute. The assignee acquires title and authority through the assignor, whose act is in the nature of a contract, and its acceptance by the assignee imposes upon him a relation of trust and confidence as to creditors and the assignor.

2. STATUTORY ASSIGNMENTS—Assignments made by operation of law, or by an assignor under legal cumpulsion, have effect solely by force of the law which makes or forces the assignor to make them. Such assignments are inoperative upon property real or personal not situated within the territory over which the laws that make or compel the debtor to make them have dominion. (Authorities cited.)

3. VOLUNTARY ASSIGNMENT—EFFECT—A general voluntary assignment, for the benefit of creditors, made by an insolvent debtor in accordance with the laws of the place of his domicile, will pass all his personal property wherever situated, un-

less the operation of such assignment is limited or restrained by some law of the state wherein the property is situated. (Authorities cited.)

4. SAME—FOREIGN STATES—The effect allowed to voluntary assignments in foreign states is not dependent upon the discretion of the courts of those states. Their validity is based upon the common law right of an insolvent debtor to make an assignment of all his property subject to the payment of his debts, for the benefit of his creditors.

5. SAME—EXEMPTION LAWS—Exemption laws have application to persons resident in the state in which they exist, and when an assignment conveys property in that and another state, it would seem that the exemption laws of the domicile should be given effect. But in case of statutory assignments this rule would not apply.

6. SAME—DEED OF ASSIGNMENT—REQUIREMENTS—ASSIGNEE—DUTIES—If the instrument be such in form and manner of execution as is required by the laws of this state to pass title, the title to the property situated in this state passes to the assignee by it, in the absence of some law in force here prohibiting such transfers. If the assignee accepts the trust he receives the title, becomes liable for the due execution of the trust, and may have his action if his right of possession be invaded.

7. SAME—A voluntary assignment covering property in more than one state is deemed valid, if it be sufficient under the law of the domicile of the assignor and under the law of the state where the property is situated, to pass title, notwithstanding local laws regulating the administration of the trust property be not complied with. (Authorities cited,)

APPEAL from Tarrant. Tried below before the Hon. M. D. Priest, Special Judge.

This was an action for damages brought by the appellant, as assignee of Michael Spiro, against W. T. Maddox, as sheriff of Tarrant county, and against the other defendants, as sureties on his official bond. The answer of defendants contained general and special exceptions and a plea of "not guilty." The cause coming on for trial, the exceptions to the petition were sustained, and the plaintiff, under leave of court, having filed a trial amendment, the exceptions were again sustained. The plaintiff declined to amend further, and the case was dismissed. The facts are stated in the opinion of the court.

*Hyde Jennings* and *Carter & Wynne*, for appellant, cited: Keating v. Vaughan, 61 Tex., 525, citing Livermore et al. v. Jenckes et al. 21 Howard 126; Burrell on Assignments, 4th ed., 301, 310; Ockerman v. Cross, 54 N. Y., 29; Rosenthall v. Bank, 17 Blatch, 324; 71 Maine, 524; Richardson v. Leavett, 1 La. An., 430; Gregg v. Sloan, 76 Va., 497; Howard Bank v. King, 10 Abb., N. Y., 346; Speed v. May, 55 American Decisions, 540; Guillaudet v. Howell, 6 American Law Register, 522, 527, with valuable note on page 529; 49 Mo., 548; 3 Mo., 252; Revised Statutes of Missouri, vol. 1, p. 54; Assignment Law of Texas, act of March 24, 1879; Handford v. Paine, 32 Vt., 442; Rice v. Cour-

tis, *Id.*, 460; Mead *v.* Dayton, 28 Conn., 33; Whipple *v.* Thayer, 26 Am. Dec., 628, and notes; Chewning *v.* Johnson, 52 Am. Dec., 610.

*Hogsett & Greene*, for appellees, cited: Acts of 1879, p. 57; Guillander *v.* Howell, 35 N. Y., 657; Kelly *v.* Crapo, 45 N.Y. 86; Zipcey *v.* Thompson, 1 Gray, 245; Fall River Iron Works Co. *v.* Croade, 15 Pick., 18; Blake *v.* Williams, 6 Pick., 313; Ingraham *v.* Geyer, 13 Mass., 146; Booth *v.* Clark., 17 How., 337; Green *v.* Van Buskirk, 5 Wal., 312; *Id.*, 7 Wall., 150; Wharton Con. Laws, secs. 338, 346, 347, 390 *a*; Burrell on Assignments, 363, 364; Dunlap *v.* Rogers, 47 N. H., 287; Kidder *v.* Tufts, 48 N. H., 125; Olivier *v.* Townes, 2 Martin, La. N. S., 93; Moseby *v.* Burrow, 52 Tex., 396; Booth *v.* Clark, 17 How., 337.

STAYTON, ASSOCIATE JUSTICE.—On April 27, 1882, M. Spiro, who was an insolvent person, residing in the state of Missouri, in accordance with the laws of state made a voluntary assignment of all his property for the benefit of his creditors, except such as, by the laws of the state in which he resided, was exempted from forced sale. The assignment was such as, under the laws of this state regulating assignments of insolvent debtors, would be held valid if made by a person here resident, unless vitiated by the fact that the exempt property must be ascertained by the laws of the state of Missouri.

The assignment expressly covered a stock of goods situated in Fort Worth, Texas, at which place, as well as at the city of St. Louis, in the state of Missouri, Spiro was doing a mercantile business at the time the assignment was made The goods in Fort Worth were seized by the appellee, Maddox, who was the sheriff of Tarrant county, on the next day after the assignment was made, under attachments issued in suits instituted against Spiro by some of his creditors. This action is brought by the assignee, appointed by the deed of assignment, against Maddox and the sureties on his official bond, as sheriff, to recover the value of the property. The law of the state of Missouri, regulating voluntary assignments by insolvent debtors for the benefit of their creditors, is fully pleaded in the petition, and the assignment seems to have been made in conformity thereto.

The petition alleges that the assignee qualified, by giving bond and doing such other things as were required by the laws of Missouri to authorize him to administer the estate, and that he had so qualified and was in possession of the goods, through agents, at the time the sheriff made the seizure. It is also alleged that the sheriff was notified of the right of the assignee at the time he made the seizure, and

further, that Spiro did not owe and was not indebted to any citizen of Texas.

The defendants filed general demurrers to the plaintiff's petition, which were sustained and the cause dismissed. The grounds on which the court based its judgment do not appear in the record, but the brief of counsel for appellees submits propositions in support of the ruling, which we may regard as the grounds upon which the court below acted. The propositions are as follows:

1. "An assignment, to be valid in Texas, must be filed and recorded as other instruments."

2. "The assignee, before taking possession of the property, shall give bond payable to the state of Texas, which shall be deposited with the county clerk."

3. "The laws of a state have no force beyond its territorial limits, and if permitted to operate in another state, it is only when neither the state nor any citizen thereof would suffer an inconvenience from the application or enforcement of such law."

4. "The rule that the law of the domicile of the person making a transfer of personal property, will control, is subject to many exceptions, and the law of the place where the property is situated will be looked to and control when the ends of justice require it."

5. "It would only be on a principal of *comity* that the courts in Texas would enforce an assignment made in Missouri under the laws of said state, and not then when it would thereby prejudice any citizen of this state."

6. "An assignment of property for the benefit of creditors, made under an insolvent debtor's law of a particular state, which law also makes provisions for the administration of the estate assigned according to its own law and in one of its own courts, and places the assignee under the control of said court, is inoperative to vest in the assignee the title to property situated beyond the limits of the state in whose courts said estate is to be administered. In such case the assignee is virtually a receiver, and cannot act beyond the jurisdiction of the court under the control of which he acts."

The assignment in question is what is properly termed a voluntary assignment. It was not made in obedience to a law which compelled the assignor to make it, or which exacted from the creditor a surrender of any demand against the debtor in consequence of it, or as a condition to be allowed to take benefits under it. The right to make such assignments, if made *bona fide*, is not derived from statutes, but existed at common law, and now, in most of the states of this union,

laws have been enacted to regulate, control and secure the faithful execution of the trust by the named assignee.

The assignee acquires title and authority through the assignor, whose act is in the nature of a contract, and the acceptance of it by the assignee, imposes upon him a relation of trust and confidence as to creditors and the assignor. Such assignments are termed voluntary assignments, from the fact that they are the products of a will acting without legal compulson, and to distinguish them from such transfers as are made solely by operation of law, or by an assignor under legal compulsion. The one has effect as other contracts, while the other has effect solely by force of the law which makes or compels the assignor to make the assignment. This difference it is important to observe when considering the effect to be given to an assignment in a state other than that in which it is made.

If it be an assignment under a compulsory statute, it exists alone by force of the law which cannot operate extra territorially. The law is compulsory if it requires the assignment to be made even at the request of creditors, or if it provides for the discharge of the claims of creditors, without their consent, upon the voluntary surrender by the debtor, under the terms of the law, of all his property for the benefit of creditors. State insolvent laws which compel the insolvent debtor to surrender his property to an assignee, to be administered under the direction of a court for the benefit of creditors, and which compel the creditor to release the debtor on such full surrender, are instances of these classes. In America such assignments are held inoperative upon property, real or personal, not situated within the territory over which the laws that make, or compel the debtor to make them, have dominion, as are discharges of the debtor, attempted to be made under them, inoperative, as to persons not resident in the state, under whose laws they are made. Whart. on Conf. of Laws, 390, 390 a; Story on Conf. of Laws, 410, 416; Burrell on assignments, 303; United States v. The Bank, 8 Robinson, 414; Hutchinson v. Peshine, 16 N. J. Eq., 170; Felch v. Bugbee, 48 Me., 9; Walters v. Whitlock, 9 Fla., 95; Ogden v. Saunders, 12 Wheat., 213; Harrison v. Sterry, 5 Cranch, 302; Willets v. Waite, 25 N. Y., 583; Holmes v. Remsen, 20 John., 265; Abraham v. Plestoro, 3 Wend., 538; Dalton v. Currier, 40 N. H., 247; Saunders v. Williams, 5 N. H., 214; Blake v. Williams, 6 Pick., 285.

It seems, however, to be everywhere admitted that a general voluntary assignment, for the benefit of creditors, made by an insolvent debtor, in accordance with the laws of the place of his domicile, will pass all his personal property wherever situated, unless the operation of such assignments is limited or restrained by some law of the state

in which the property is situated. Hanford v. Paine, 32 Vt., 442; The United States v. The Bank of the United States, 8 Robinson, 414; Rosenthal v. The Mastin Bank, 17 Blatchford, 323; Law v. Mills, 18 Pa. St., 185; Whipple v. Thayer, 16 Pick, 25; Black v. Zacharie, 3 Howard, 514; Green v. Van Buskirk, 7 Wall., 150; Story on Conf. of Laws, 383–390, 410–416; Burrill on Assignments, 301, 302, 306, 307; Walters v. Whitlock, 9 Fla., 86; Holmes v. Remsen, 20 Johns. 265; Saunders v. Williams, 5 N. H., 214.

That a voluntary conveyance of personal property, made in accordance with the law of the domicile of the assignor, is valid elsewhere, is the general rule, cannot be denied, and when it is claimed not to be so in a given case, the law of the *situs* must be looked to; for it is the right of every sovereignty to determine what shall be requisite to the transfer of property, real or personal, situated within its territory, and what remedial rights in reference to it shall exist. The laws of a state which will control such questions are ordinarily those made for the government of its own citizens in making contracts and asserting rights. This is well illustrated in cases in which a controlling effect was given to the law of the place where the property was situated. The following are cases of that character: Green v. Van Buskirk, 5 Wall., 307; s. c., 7 Wall., 141; Guillander v. Howell, 35 N. Y., 657; Olivier v. Townes, 2 Martin (N. S.), 93; Rice & Danenbaum v. Courtis, 32 Vt., 460.

There are expressions to be found in many opinions from which the inference may be drawn that effect is to be given to such voluntary assignments by courts in states other than that in which they are made, only as a matter of comity—that it rests in the discretion of such courts to give or deny effect to such assignments as they may or not appear injurious to the rights of citizens of the state, whose laws the courts administer, and within whose limits the property may be situated. This seems to us to confer upon the courts a power too little restricted, too undefined and unlimited, to be tolerated in any country governed by laws. What, upon such a matter, is to be deemed injurious to the rights of the citizens of the state in which the property is situated, should be the subject of legislative, and not of judicial discretion. Story on Conf. of Laws, 390; Guillander v. Howell, 35 N. Y., 659.

That the assignment was made in the state of Missouri is a matter of no importance, as its validity does not depend upon any local law of that state, but is based on the common law right of an insolvent debtor to make an assignment of all his property, subject to the payment of his debts, for the benefit of his creditors. It is not denied

that the assignment is valid in the state of Missouri, and its form and manner of execution are such as to make it valid here, even under the statutes in this state regulating such assignments, unless invalidated by the fact that it makes the kind of property and its value, which is reserved from the operation of the deed, to depend upon the laws of Missouri regulating exemptions.

The laws of this state provide that an assignment, of this character shall "provide for a distribution of all his (the assignor's) real and personal estate other than that which is exempted from execution," but it does not provide that the measure of the exemption shall be furnished by the laws of this state. The same general policy of permitting insolvent debtors, who make such assignments, to except from their operation such property as is exempted from execution, prevails in this state, and in the state of Missouri. It cannot be said that that reservation made in the deed of assignment under consideration is in violation of the laws of this state, nor that it could prejudice the right of any citizen of this state who may be a creditor. Such a reservation would neither enlarge nor diminish the general fund to which creditors might resort through the ordinary process of the law to collect their debts, and were their creditors here, they would have no superior right to be paid out of the proceeds of property here situated had there been no assignment made, unless they had acquired liens. All creditors, wherever resident, have equal right in this respect.

Exemption laws have application to persons resident in the state in which they exist, and when an assignment conveys property in the and another state, it would seem that the exemption should be measured by the law of the domicile. If this were a compulsory assignment, dependent for its validity upon a statute of the state of Missouri, it is evident that the courts of this state would not give effect to the law of Missouri regulating exemptions. Bryant *v.* Young, 21 Ala., 264; Newell *v.* Hayded, 8 Clarke, (Ia.) 143; Helfenstein *v.* Cave, 3 Clarke, (Ia.) 289.

Whether a deed of assignment made in another state, by a person there domiciled, is sufficient to pass title to property here situated, must be determined by the same rules which relate to instruments transferring property for other purposes. If the instrument be such in form and manner of execution as is required by the laws of this state to pass title, then the title to property here situated must be held to pass to the assignee by it, in the absence of some law, in force here, prohibiting such transfers. When an assignee accepts the trust created by such an instrument, the title to the property passes to him for the purposes of the trust—he becomes liable for it, whether he has

complied with the requirements or the law of this state, made to secure the due execution of the trust or not, and for an invasion of his right to the possession he may have his action.

This right is generally conceded to the person who has title. The recording of the deed of assignment is required by the laws of this state for the purpose of giving notice to all persons of its existence, but there is no intimation in the statute that without such record the assignment, if made in this state, would be void. An assignee is also required by the laws of this state to give a bond, but it has never been held that the giving of such a bond is necessary to the validity of the assignment.

So far as we are advised, it has been generally held in cases of voluntary assignments, made by non-resident debtors, embracing property in a state or states other than that of the domicile, that the assignment will be deemed valid if it be sufficient, under the law of the domicile, and under the law of the country in which the property is situated, to pass title; notwithstanding the law of the *situs*, intended to regulate the due administration of trust property, be not complied with; that such laws are only intended to affect, and do only affect, assignments made by persons resident in the state in which they exist. Hanford *v.* Paine, 32 Vt., 443; Ockerman *v.* Cross, 54 N. Y., 32; Chaffee *v.* National Bank, 71 Maine, 524.

The fact that the assignee is required by the laws of the state of Missouri to administer the estate in his hands under the direction of a court of that state, can have no bearing upon the question of the validity of his assignment. As delivery is not necessary in this state to the transmission of title to personal property, we have not deemed it necessary to consider the rights of the assignee, growing out of the possession he is alleged to have had at the time the goods were seized. Nor have we deemed it necessary, in this opinion, to consider the averment that the assignor was not indebted to any citizen of Texas; for if it should appear that he was so indebted, it would not change the result, in the absence of some law of this state prohibiting the voluntary assignment of personal property, here situated, by its owner, resident elsewhere.

It is also unnecessary to consider what remedies creditors might have in this state to enforce the due execution of the trust in so far as it affects property here. From the averments of the petition, we are of the opinion that the property was not subject to the attachments levied upon it, and that the court below erred in sustaining the

demurrer to the petition, and for this reason the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 11, 1886.]

[Associate Justice Robertson did not sit in this cause.]