CARTER-BATTLE GROCER COMPANY V. JACKSON & DECHMAN ET AL.

Delivered February 19, 1898.

**1.   Assignment for Creditors—Nonresident Assignor—Registry—Delivery.**

A general assignment for creditors made by a nonresident will, without actual delivery of the property to the assignee, pass title to the assignor's personalty in Texas, and without its registry here.

**2.   Same—Effective Against Garnishment—Notice.**

After a general assignment for creditors a garnishment of the assignor's debts and effects fixes no lien, although plaintiff in the garnishment be without notice of the assignment.

**3.   Same—Effective if Valid Where Executed.**

A voluntary general assignment for creditors executed in another State, if valid there and not contrary to public policy, passes the title of the assignor's personalty in Texas, though no creditors may have accepted under it, and although the creditor attacking it here be a citizen of Texas.

**4.   Same—Preference of Firm Debts.**

In the absence of a showing that the members of a firm owed individual debts, an assignment by the firm for the benefit of all firm creditors is not invalid as preferring firm debts over the individual debts of its members.

**5.   Same—Invalid Preference in Another State.**

Under the law of New York a limited partnership can not make an assignment with preferences, and the effect of such an assignment there being that of a general assignment, it will not be invalidated here because of the ineffectual preferences.

**6.   Same—Preference Not Ground of Complaint.**

A preferred creditor can not complain of an assignment because of the preference.

**7.   Same—Limited Partnership—Signature of All Members.**

Failure of a limited partnership to put the names of all its members on its sign, as required by the statutes of New York, and the fact that some of the members did not sign the deed of assignment for creditors, will not invalidate a general assignment executed there, it appearing that the partners who did not sign promptly ratified the action of the signers.

**8.   Same—Practice—Issue of Preference to Be Made.**

The question of whether a foreign assignment for creditors of a firm is invalid because it permits (as allowed by the law of the foreign State, but prohibited by the Texas law) that limited partners should participate in the assets, involves matters of fact as well as law and can not be first raised in the appellate court.

APPEAL from Dallas.   Tried below before Hon. EDWARD GRAY.

*McCormick & Spence,* for appellant.

*Coke & Coke,* for appellee.

FINLEY, CHIEF JUSTICE.—On February 26, 1896, the appellant instituted a suit against E. Seidenberg, Stiefel & Co. in the District
Vol. XVIII. Civil—23

Court of Dallas County, Texas, made an affidavit and bond for attachment on the ground of nonresidence of the defendants, which writ was issued, and on the same day made application for writ of garnishment against Jackson & Dechman. Garnishment issued on February 26, 1896, and was served on the same day. Judgment was rendered in the original cause in favor of appellant against E. Seidenberg, Steifel & Co., and one of the partners, on April 11, 1896, for $1988.04, with interest after date at the rate of 6 per cent per annum, and $9.80 costs of suit.

On September 14, 1896, Jackson & Dechman answered, setting forth that they had in their possession when the garnishment was served, certain goods, wares, and merchandise, specifically set forth in said answer, and were indebted also in the sum of $1219.70.

On April 4, 1897, Jackson & Dechman filed an amended answer, setting forth that they were indebted to the original defendants in the sum of $2500, and that they were informed that one Milton S. Guiterman, claimed to be assignee in the general assignment made by the original defendants, had qualified as such assignee, and was claiming the funds in their hands. That said Milton S. Guiterman, as assignee, had intervened in the case, and they prayed the court to adjust the rights of all parties and enter such judgment as would protect the garnishees; and they also prayed for reasonable attorney's fees and costs.

Before the trial, Milton S. Guiterman filed an amended plea of intervention, alleging the existence of a limited partnership composed of the defendants in the original suit; that said limited partnership, living and doing business in New York, was the creditor of Jackson & Dechman. That the general partners of said partnership had on January 15, 1896, executed to him a deed of general assignment, including all their assets, which included the indebtedness owing by Jackson & Dechman, as well as the personal property in their hands; setting up his rights, appointment, and qualification as assignee, and the laws of New York relative to his claim as assignee, and prayed judgment against this appellant and Jackson & Dechman for the amount of the assets in the hands of Jackson & Dechman.

On May 13, 1897, appellant filed a reply to the intervention of Milton S. Guiterman, consisting of (1) general demurrer and (2) general denial, and a plea alleging that the general assignment under which the intervener claims was not executed by all the members of the firm of E. Seidenberg, Steifel & Company. That at the time said assignment was made, each of the partners of the firm of E. Seidenberg, Steifel & Co. had individual property and owed individual debts; wherefore, said assignment was void as to plaintiff.

The cause came on for trial on May 14, 1897, before the court and a jury. Judgment was rendered overruling the general demurrer of the appellant to the plea of intervention of Milton S. Guiterman, to which plaintiff excepted. And upon verdict of the jury, found under peremptory instructions of the court, a judgment was recovered by Milton S. Guiterman against appellant and Jackson & Dechman for $2500,

which sum had been deposited in the registry of the court; and further judgment was obtained by Jackson & Dechman against appellant for $100 as attorney's fees. From this judgment appellant prosecutes this appeal.

The following facts were proven upon the trial:

1. E. Seidenberg, Steifel & Co. was shown to be a business partnership, formed under and in accordance with the laws of the State of New York, and doing business in that State. The partners who composed the firm were Emil Seidenberg, Joseph Seidenberg, Adolph Steifel, B. Beinecke. The last two named were special or limited partners, while the others were general partners.

2. On January 16, 1896, the said firm executed a voluntary general assignment, in form as follows:

"Whereas, Emil Seidenberg, Joseph Seidenberg, Adolph Steifel, Bernard Beinecke, and Joseph Hesdorfer, all of the city of New York, constitute the limited partnership doing business in the city of New York, under the firm name of E. Seidenberg, Steifel & Company, whereof Emil Seidenberg, Joseph Seidenberg and Adolph Steifel are the general partners, and Bernard Beinecke and Joseph Hesdorfer are the special partners; and,

"Whereas, the said limited partnership is embarrassed and unable to meet its obligations as they fall due; and,

"Whereas, the business carried on by the said limited partnership at and prior to the making of this assignment was manufacturing and selling cigars, and the place at which said business was conducted was No. 1322 Avenue A, in the city of New York.

"Now, we, Emil Seidenberg, residing at No. 6 East Twenty-sixth Street in the city of New York; Joseph Seidenberg, residing at No. 364 Sixty-ninth Street in said city, and Adolph Steifel, residing at No. 6 East Eighty-sixth Street in said city, in consideration of the premises and one dollar to each of us in hand paid by Milton S. Guiterman, residing at No. 53 East Sixty-sixth Street, in the city of New York, do hereby grant, convey, bargain, sell, assign, transfer, and set over unto the said Milton S. Guiterman all the assets of every description whatever, belonging to the said limited copartnership, in trust, and for the purposes hereinafter mentioned.

"First. To sell the said assets and convert the same into money, and to collect all outstanding accounts due to the said partnership, as soon as practicable.

"Second. Out of the proceeds so realized to pay and discharge all the just and reasonable expenses, costs, and charges of executing this assignment and of carrying into effect the trust hereby created.

"Third. To apply all the residue of said proceeds to the payment of all the debts and liabilities of every nature of the said limited partnership, and to pay such debts in full, and if the said residue of such proceeds be insufficient for that purpose, then to pay such debts pro rata.

"Fourth. We, the said Emil Seidenberg, Joseph Seidenberg and

Adolph Steifel, do hereby further assign to the said Milton S. Guiterman, in trust, all of our respective individual property of every nature whatsoever, except such as is exempt by law from levy and sale under execution; and authorize and direct the said Milton S. Guiterman to sell such individual property and convert the same into cash as soon as practicable, and apply the proceeds to the payment of the debts and liabilities of the said limited partnership, equally.

"Fifth.   The said Milton S. Guiterman hereby assents to the above assignment, and hereby accepts the trust created and reposed in him by this instrument, and hereby agrees to faithfully perform the trust hereinbefore created according to the best of his skill, knowledge, and ability.

"In witness whereof, the said Emil Seidenberg, Joseph Seidenberg, Adolph Steifel, and Milton S. Guiterman have hereunto set their hands and seals, this 15th day of January, 1896.

"EMIL SEIDENBERG (L. S.);  JOSEPH SEIDENBERG (L. S.);  ADOLPH
       STEIFEL (L. S.);  MILTON S. GUITERMAN (L. S.)"

The assignment was duly acknowledged and registered as required by the laws of the State of New York, and the assignee accepted the trust and filed a schedule of debts in accordance with the law.   The following is among the debts set out:

"Note due May 2, 1896.   Holder unknown, accruing at New York City, the sum of $5000.

"This indebtedness is for money loaned and advanced to the assignors upon their promissory note.   There is owing on the said note the sum of $5000.   Said note is indorsed by Bernard Beinecke and Joseph Hesdorfer; the said Bernard Beinecke and Joseph Hesdorfer, who are accommodation indorsers on said note, hold as collateral security to them, the collateral indorsers, the said note and the three notes next following, each for the sum of $5000, ten notes made by the assignors, each respectively for the sum of $2000, and delivered to the said Bernard Beinecke and Joseph Hesdorfer, and also the following merchandise: 50 cases Zimmer's Spanish leaf tobacco, '89 crop; 35 cases Wisconsin Hav. seed leaf tobacco, '91 crop; 48 cases Zimmer's Spanish leaf tobacco, '91 crop; 61 cases Onondaga leaf tobacco, '92 crop."

3.   New York statutes were introduced in evidence which it is not deemed necessary to here set out; they will be found in the transcript of the record on pages 82 to 95, inclusive, and their effect will be noted in the opinion.

4.   It was proven that in limited partnerships, under the laws of New York, it is not necessary in executing an assignment that the limited partners shall join therein, and such a partnership can not make preference of partnership over individual creditors in a general assignment. The effect of such an assignment is to convey all the property of the partnership and individual general partners, not exempt from execution, for the benefit of all the creditors.

*Opinion.*—Appellant urges before us these grounds for a reversal of the judgment:

(1.)  It does not appear that the assignment was registered in Texas, nor that the assignee had taken actual possession of the personal property in Texas which is sought to be reached by the garnishment, nor that the plaintiff in the garnishment had notice of the assignment prior to the service of the writ of garnishment.

The registry of an assignment is not made necessary to its validity by the laws of this State.  Weider v. Maddox, 66 Texas, 379.  In the same case it is held that a general voluntary assignment, for the benefit of creditors, valid under the laws of the place of the assignor's domicile, will pass the title of the assignor to all his personal property, wherever situated, unless the operation of such assignment is limited or restrained by the laws of the State wherein the personal property is situated.  Id., 376-379.

We are advised of no provision in our statutes, or principle established by decisions of our courts, which would stand in the way of the operation of such an assignment to pass title to the assignee of the personal property assigned, located in this State, without actual delivery of possession to the assignee.

As to the further proposition that the service of the writ of garnishment, without notice of the assignment, fixed a lien in favor of appellant upon the personal property in the hands of the garnishees and the debt owing by them to appellee, we can not approve it as sound.  In Smith v. Railway, 39 Southwestern Reporter, 971, we held that the effect of the garnishment was merely to impound such debt as the garnishee owed, and if the debt had been previously assigned, the garnishment was ineffectual, though no notice of the assignment was had prior to the service of the writ.  There is nothing in our registration laws which fixes a lien in favor of garnishing creditors upon debts or effects which have been assigned without notice to them, prior to the service of the writ. If the assignment prior to the service of the writ is valid, then appellant acquired no lien by reason of the fact that it had no notice of such assignment when it sued out and caused the garnishment to be served.  A quasi lien is said to be fixed by service of garnishment upon debts owing by the garnishee to the debtor of the plaintiff in garnishment, and effects in the hands of the garnishee belonging to the debtor; but this proposition is true, and such quasi lien obtains, only when the garnishee owes the debt to the defendant in the garnishment, or holds effects belonging to him at the time of the service of the writ, and if a valid assignment has been previously made of such debt or effects, then no quasi lien thereon or interest therein is acquired through the garnishment.

(2.)  It is also contended that the assignment is not valid, because it was not shown that any of the creditors for whose benefit the assignment was made had accepted its terms.

The assignment is a voluntary general assignment, executed under and in accordance with the statutory laws of the State of New York, and is

a valid assignment under such laws. There being nothing in the laws of this State to inhibit the operation of such an assignment upon personal property situated here, there is no apparent reason why the courts of this State should not uphold it as a valid assignment. Personal property has no fixed situs, and by fiction of common law it attaches to the person of the owner, and whenever the owner voluntarily conveys such property in a manner which is legal by the laws of his domicile, it will pass the title thereto wherever situated, unless the laws of the State where the property is situated are of such a character as will prohibit the operation of such a conveyance. In this connection, it is insisted that appellant is a citizen of this State, and that it would be prejudicial to its interests for our courts to recognize the validity of this assignment under the laws of the State of New York and uphold the title which passed by such conveyance, and for this reason it should not be done.

As the assignment is not in contravention of any law of this State, nor contrary to any defined public policy of the State, appellant's citizenship is a matter to which our courts will pay no regard in administering justice upon well founded principles of general application. Weider v. Maddox, 66 Texas, 377; Hanford v. Paine, 32 Vt., 442; Story on Conflict of Laws, secs. 383-396; 2 Kent's Comm., 455; Re Daplay, 6 L. R. A., 108, and notes.

The further contention that the assignment is not enforceable in Texas, because it prefers firm debts over the individual debts of the persons composing the firm, can not be sustained.

The assignment, upon its face, is for the benefit of all the firm creditors; there is not the slightest evidence that the members of the firm owed any individual debts, and therefore there is nothing to indicate the preference of one class of creditors over any other class. In the State of New York a limited partnership, such as the one in question, can not make any preferences, and the effect of such an assignment is to convey all the property of the assignors for the benefit of all their creditors. If such a preference had been expressed, it should be disregarded, but it does not necessarily follow that the assignment should for that reason be held void. Faut v. Elsbury, 68 Texas, 1.

Aside from the views above expressed, appellant is a firm creditor, and can not consistently complain that it is among a favored class of creditors. Scott v. Guthrie, 25 How., 512.

(3.) Appellant insists that the statutes of New York regulating the formation of limited partnerships were not complied with, in that the name of Joseph Hesdorfer appears twice in giving the names of the partners.

The limited partnership of E. Seidenberg, Steifel & Co. was composed of Emil Seidenberg, Joseph Seidenberg, Adolph Steifel, B. Beinecke, and Joseph Hesdorfer. The original partnership articles mentioned these persons as composing the firm and their signatures appear thereto, the said Beinecke being represented by J. Hesdorfer, who signs for him thus: "B. Beinecke, by J. Hesdorfer." The law of New York requires

the partnership articles to be published for a certain length of time. The publication shows a literal copy of the partnership articles, except after the signature of the said Beinecke, and below and to the right of it, the said Hesdorfer's name is twice printed. The testimony of Beinecke and Hesdorfer shows that they, together with the said Emil and Joseph Seidenberg and Adolph Steifel, composed the firm. We do not regard the stating of one of the partner's name twice in the publication of the articles of partnership (evidently an inadvertence) as a failure to comply with the statutes in question in any substantial particular. Evidently no one could have been misled by it, and it is manifest from the evidence that appellant was not, as it appears that its officers and agents did not know the character of the partnership at all.

The statutes of New York require that such a partnership shall put all the names of the partners upon a sign and put it in a conspicuous place in front of the building in which it has its chief place of business, and in case this is not done that no action shall be abated or dismissed by reason of any variance in the proof and pleadings as to the names and numbers of partners, but the pleadings may be amended to conform to the proof. Appellant contends that there was no proof that this requirement was met, and for this reason the partnership should be treated as a general partnership, and that as all the partners did not join in making the assignment, it should be held void.

It would be sufficient reply to this contention to say, that the statute itself fixes the penalty which shall obtain for failure to comply with this special provision. We will say further, however, that the evidence shows that the limited partners who did not sign the conveyance promptly assented to and approved the action of the signing partners in the premises, on being informed of the execution of the assignment. All the other partners joined in the execution of the assignment. It was shown not to be necessary under the laws of New York for the limited partners to join in the execution of the assignment.

Appellant further urges that the limited partners are shown to be creditors of the assigning firm, as such are provided for in the assignment, and by the laws of the State of New York are permitted to participate in the assets upon equal terms with other creditors; and as our statutes prohibit special partners sharing in such assets until all other creditors are paid, to uphold this assignment would violate a public policy of this State, as declared by its statutes.

The issues, formed in this case by pleadings, are as follows:

1.  The garnishees answered admitting indebtedness and the possession of effects of the plaintiff's debtor, but allege the making of the assignment, and ask that the claim of the garnishing plaintiff and the assignee be adjudicated and that the garnishees be protected by the decree.

2.  The assignee intervened, and set up the assignment as the basis of his claim to the debt owing and the property held by the garnishees.

3.  The garnishing plaintiff replied that the assignment was invalid, for two reasons, (a) it·was not executed by all the partners; (b) the in-

dividual partners owned individual property and owed individual debts, raising the issue of preference of partnership over individual debts.

It will be seen that the pleadings did not raise the issue that the limited partners were creditors of the assigning firm, and were, as such, provided for in the assignment and entitled under the laws of New York to participate in the distribution of the firm assets. The record shows that the two limited or special partners were sureties upon the note of the assignors for $5000, and that they held, as collateral to indemnify them against loss, negotiable paper and a lot of tobacco belonging to the firm.

These facts appear from the schedule of debts filed with the assignment, and introduced in evidence by the intervener. It was also shown that the statutes of New York permit limited or special partners, under such circumstances, to participate in the assets of the failing firm upon equal terms with other creditors. Under this state of pleadings and evidence, we do not think the proposition urged fairly arises, and we are not called upon to decide it. It does not appear that this ground to avoid the force of the assignment was presented upon the trial below; and as it involves questions of fact as well as of law, appellant should not be permitted to raise it for the first time in this court.

We find no errors in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.